UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOHN DOE**, | **COMPLAINT** |
| Plaintiff, | Civil Action No.: **5:23-cv-153 (GTS/TWD)** |
| v. | (____/____) |
| **SYRACUSE UNIVERSITY,** **BOARD OF TRUSTEES OF SYRACUSE UNIVERSITY, ROBERT HRADSKY, KARA ZARNOWSKI, JOHN ROMANO, AND ILIKEA FUENTES,** in their individual and official capacities, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, John Doe,[1] by and through his attorneys, Bousquet Holstein PLLC, as and for his Complaint against Defendants, Syracuse University, Syracuse University Board of Trustees, Robert Hradsky, Kara Zarnowski, John Romano, and Ilikea Fuentes, states as follows:

## INTRODUCTION

1.      Plaintiff John Doe ("Plaintiff" or "Doe") brings this action under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), Section 1981 of the Civil Rights Act of 1981, 42 U.S.C. § 1981 ("Section 1981"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"), and under New York State common law for claims of battery, assault, false arrest and false imprison, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring, training, and supervision.

2.      Plaintiff seeks to recover compensatory and punitive damages, as well as fees, costs, disbursements, and interest, from Defendants Syracuse University ("SU") and the Board of Trustees of Syracuse University ("SU Board") (collectively, "Syracuse University") as well as from individual Defendants Robert Hradsky ("Defendant Hradsky"), Kara Zarnowski

Bousquet Holstein PLLC • 110 West Fayette Street, Suite 1000 • Syracuse, New York 13202 • (315) 422-1500

("Defendant Zarnowski"), John Romano ("Defendant Romano"), and Ilikea Fuentes ("Defendant Fuentes") (collectively, "Defendants") in both their individual and official capacities for their willfully biased, wanton, and abusive conduct against Plaintiff.  Defendants' actions included their unlawful arrest of Plaintiff and use of excessive force, their unlawful detention of Plaintiff, their initiation of criminal proceedings against Plaintiff based on false and deliberately misstated allegations, and their prolonged and unjust suspension of Plaintiff from SU.

## **THE PARTIES**

3.      Plaintiff John Doe is a Black male resident of the State of New Jersey.   At all relevant times, he has been enrolled as a full-time undergraduate student at SU.

4.      Defendant SU is a private, non-profit institution of higher education located in Syracuse, New York.   Upon information and belief, at all times relevant to this Complaint, SU has received federal funding and/or federal financial assistance.

5.      Upon information and belief, Defendant SU Board has 45 voting members and has authority to promulgate the Student Code of Conduct Handbook and other rules and policies that govern student life at SU.

6.      Upon information and belief, Defendants Zarnowski, Romano, and Fuentes are sworn public safety officers and employees of the SU Department of Public Safety ("DPS").   In their official capacities, they enforce rules and policies promulgated by the SU Board, including the Code of Student Conduct.  They also exercise law enforcement authority within SU's campus and any properties owned, controlled, or administrated by SU pursuant to a Memorandum of Understanding ("MOU") between DPS and the City of Syracuse Police Department ("SPD").

---

[1] Plaintiff John Doe has contemporaneously filed a motion to proceed by pseudonym with respect to both him and Jane Roe.

7.     Upon information and belief, Defendant Hradsky is the Dean of Students and Associate Vice President of the Student Experience.  In his official capacity, he is responsible for implementing policies relating to student discipline and campus safety.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1331 and under 28 U.S.C. § 1367(a) because Plaintiff's causes of action arise under laws of the United States.  This Court has supplemental jurisdiction over all state court claims under 28 U.S.C. 1367 (b).

9.     This Court also has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity.  John Doe is a resident of the State of New Jersey whereas all Defendants reside in the State of New York.  The amount in controversy exceeds $75,000.

10.     This Court has pendant or supplemental jurisdiction under 28 U.S.C. § 1332 to hear and adjudicate Plaintiff's causes of action under New York State law.

11.     Venue is proper in the United States District Court for the Northern District of New York because a substantial part of the acts and omissions giving rise to Plaintiff's claims took place within this jurisdiction.

## FACTUAL BACKGROUND

12.     Plaintiff enrolled in SU as an undergraduate in September 2018, after he graduated from high school with an impeccable academic record.

13.     In both early childhood and adolescence, Plaintiff was diagnosed with Attention Deficit Hyper Disorder (ADHD), a processing speed disorder, severe anxiety, and a non-verbal learning disorder.

14.     Some or all of these diagnoses were shared with SU's Office of Disability Services (ODS) in September 2018 in connection with a request by Plaintiff for accommodations.

***Plaintiff's History with Jane Roe***

15.     Plaintiff met a female student, Jane Roe, at a freshman orientation event in August 2018.  Plaintiff and Jane Roe were initially friendly.  They exchanged social media information and added each other as "friends" on Snapchat, which is a social media platform.

16.     During the Fall semester of 2018, Plaintiff occasionally saw Jane Roe on SU's campus.  Jane Roe romantically pursued a friend of Plaintiff's, and she would sometimes appear at lunches or at social events where Plaintiff was also present.

17.     On or about February 12, 2019, Plaintiff was sitting with his friend at a lunch table when Jane Roe approached the table and sat with them uninvited.  Jane Roe then started an argument with Plaintiff, during which she stood up, picked a ketchup bottle off the table, and lunged towards Plaintiff, squirting ketchup onto his clothes.  Plaintiff was understandably shocked and humiliated.  He splashed a cup of water at Jane Roe and walked away.

18.     On or about March 4, 2019, Jane Roe approached and confronted Plaintiff a second time.  Plaintiff was eating lunch with friends when Jane Roe saw him through a glass window.  She began recording him and yelling at him.

19.     About two days later, Jane Roe filed a complaint against Plaintiff with DPS.  The complaint contained false allegations that Plaintiff had harassed and assaulted her.

20.     As a result of Jane Roe's complaint, SU immediately issued a no-contact order (NCO) to Plaintiff.  The NCO prohibited Plaintiff from initiating face-to-face or indirect (including phone, text, and social media) contact with Jane Roe.

21.     Upon information and belief, the NCO was reciprocal, such that Jane Roe was also prohibited from initiating face-to-face or indirect contact with Plaintiff.

22.     On or about July 18, 2019, a Student Conduct Board assembled pursuant to SU's Student Conduct Handbook (the "Conduct Board") held a hearing relating to Jane Roe's complaint.

23.     Plaintiff told the Conduct Board that there was camera footage from the incident. However, upon information and belief, the committee did not review the camera footage.

24.     On or about August 9, 2019, the Conduct Board issued a decision regarding the complaint filed by Jane Roe.  It entered a factual finding that Jane Roe was not credible, and that she "downplayed" her own role in the February 12th and March 4th incidents.

25.     However, the Conduct Board nonetheless issued a one-year disciplinary probation against Plaintiff.  Upon information and belief, the Conduct Board did not issue sanctions against Jane Roe.

26.     During the months that followed the disciplinary hearing, Jane Roe continued to harass Plaintiff while telling mutual acquaintances that she intended to get him arrested and destroy his academic career.

27.     On one occasion, Jane Roe falsely reported that Plaintiff violated the NCO by viewing one of her stories on Snapchat.  In fact, Plaintiff was unaware that he was still "friends" with Jane Roe on Snapchat.  When viewing stories on Snapchat, he accidentally viewed her story because the stories of his "friends" play back-to-back.

28.     In fact, it was Jane Roe, not Plaintiff, who repeatedly violated the NCO.  In September 2021, Jane Roe attempted to physically attack Plaintiff.  Plaintiff was greeting a friend at a local eatery, when Jane Roe charged at him while screaming, "Don't acknowledge

someone while I'm here!"  Plaintiff's friend held her back from hitting Plaintiff, as she had lunged towards Plaintiff and swung her arms in rage.

29.     In December 2021, Plaintiff was leaving class when someone asked him if he knew Jane Roe.  He responded, "I know her, but we don't speak at all.  We don't have a good relationship at all."

30.     A few days later, Jane Roe approached Plaintiff aggressively and shouted, "I heard you were talking about me.  Just know that I can get you arrested."

31.     In addition to threatening and harassing Plaintiff, Jane Roe also encouraged other students, mostly female students, to spread false and incendiary rumors about Plaintiff.  In one such instance, Jane Roe and a group of her female friends called Plaintiff a "rapist" on YikYak (a social media platform).  As a result of this action, numerous students threatened to physically harm Plaintiff.

32.     On several occasions, Plaintiff and his family reported this conduct to SU. However, upon information and belief, SU did not take disciplinary action against Jane Roe and the other female students who threatened and harassed Plaintiff.

***The Events of February 8, 2022***

33.     The threatening and harassing conduct of Jane Roe and other female students continued until the Spring 2022 semester, which was Plaintiff's and Jane Roe's final semester at SU.

34.     On February 8, 2022, Plaintiff was walking to class.  He had just finished eating his lunch and was holding a fountain drink in his right hand.

35.     As Plaintiff was approaching the Whitman School, he passed Jane Roe, who was wearing a mask.  Plaintiff mistook Jane Roe for another student and greeted her by saying "hi."

36.     Jane Roe then turned around towards Plaintiff.  She lowered her mask, and shouted, "Do you know who I am?  I can get you arrested!"

37.     As soon as he learned of Jane Roe's identity, Plaintiff proceeded to briskly walk away from Jane Roe and towards his class.

38.     Jane Roe then pursued Plaintiff.  She aggressively put her cell phone camera in his face and shouted, "This is ███████████!"

39.     Plaintiff became very uncomfortable and anxious, because Jane Roe had threatened on numerous occasions that she would have him arrested.  His immediate reaction was to push Jane Roe's camera out of his face with an open left hand and say, "Get that camera out of my face."   Plaintiff did not punch or otherwise strike Jane Roe.

40.     Plaintiff then ran inside the Whitman School.  He immediately called his mother and told her about the incident.

*DPS Enters Plaintiff's Classroom and Attacks Plaintiff*

41.     After speaking with his mother, Plaintiff proceeded to go to class.  He was scheduled to give a presentation, so he went to the front of the room and began speaking to the class.

42.     Upon information and belief, Defendants Zarnowski and Fuentes received a complaint from Jane Roe and then proceeded to Plaintiff's classroom, where they stood outside the hallway for several minutes waiting for Defendant Romano.  Bodycam footage taken from the incident shows Defendant Zarnowski stating that she is looking for a "black male" and then standing in the hallway outside of the front door of Plaintiff's classroom, appearing very anxious to enter the classroom.

43.     The footage also shows Plaintiff's professor stepping outside the classroom to speak with Defendants Zarnowski and Fuentes.  Defendant Zarnowski asked the professor if Plaintiff was in the classroom.

44.     The professor responded that Plaintiff was presenting in the front of the classroom, and he requested that Defendant Zarnowski "let him finish his presentation." Defendant Zarnowski declined to wait in the hallway and stated "we're waiting for the other officer and then we're going to jump in."  She did not inform the professor that she and the other DPS officers intended to arrest Plaintiff.

45.     About five minutes into his presentation, while he was standing and speaking at the front of a classroom of about 40 fellow students, Defendants Zarnowski, Romano, and Fuentes entered the classroom, approached Plaintiff, and said, "you gotta come with us."

46.     Defendants Zarnowski, Romano, and Fuentes did not identify themselves.  They did not inform Plaintiff that he was under arrest and they did not read him his Miranda rights.

47.     Plaintiff was confused as to why the officers were asking him to come with them. He asked, "why?" and then told them that he needed to know where he was being taken. Plaintiff took one step back, but he did not attempt to flee from Defendants Zarnowski, Romano, and Fuentes.

48.     Then, without any provocation, Defendants Zarnowski, Romano, and Fuentes forcibly knocked Plaintiff to the ground from behind and restrained his arms and hands behind his back.  The three officers held him face down for several minutes.

49.     Plaintiff suffers from asthma and anxiety and began to lose his breath.  He pleaded, several times, "Stop! and "I can't breathe!"

50.     Several students in the classroom looked on and pleaded with Defendants Zarnowski, Romano, and Fuentes to stop assaulting Plaintiff.  One student told the officers that Plaintiff has a medical condition.

51.     The officers nonetheless continued to hold Plaintiff on the ground and handcuff him without providing him with an explanation of why he was being restrained.  In video footage taken of the incident, one of the officers can be heard stating to Plaintiff, "Stop.  You're making a scene in class."  Officer Zarnowski was heard stating, "work with us and we will tell you after, all you have to do is cooperate."  Another officer falsely stated that Plaintiff had a "knife," when, in fact, he had a plastic butter knife wrapped in a napkin in his pocket, which he had saved from his lunch.   Officer Romano stated, "stop resisting" in an apparent attempt to justify his use of unnecessary and excessive force.

52.     As Plaintiff was pinned to the ground, he was dehumanized and humiliated in front of his peers.   The fact that Defendants did not inform Plaintiff as to why he was being restrained and taken away added to his anxiety and made it even more difficult for him to breathe.

53.     Defendants Zarnowski, Romano, and Fuentes did not call for an ambulance or other medical support, even though Plaintiff was clearly stating that he was unable to breathe.

54.     Defendants Zarnowski, Romano, and Fuentes then dragged Plaintiff out of the classroom.  Bodycam footage taken from the hallway outside the classroom shows that Plaintiff was in shock, sweating, and desperately trying to catch his breath even after he was able to get to his feet.

55.     After Defendants Zarnowski, Romano, and Fuentes handcuffed Plaintiff and dragged him out of the classroom, Defendants Zarnowski and Fuentes proceeded to escort him through the building in handcuffs as other students watched from the hallway.

56.     Plaintiff was then taken to the DPS office, where he was detained for hours without being permitted to use the bathroom or make a phone call.   Plaintiff was released only after his parents located him and demanded his release.

57.     Defendants Zarnowski, Fuentes, and Romano's conduct in entering Plaintiff's classroom and approaching him while he was giving a presentation, and then aggressively pinning to the ground, restraining him face down, forcefully handcuffing him, and taking him into custody was unjustified and unreasonable.

58.     Upon information and belief, Defendants Zarnowski, Fuentes, and Romano took such action against Plaintiff because he is a Black man.

### *SU Initiates a Criminal Proceeding Against Plaintiff Based on False Charges*

59.     Following Plaintiff's arrest, SU filed two criminal charges for Assault in the 3rd Degree and one charge of Resisting Arrest against Plaintiff.

60.     In support of its first charge of Assault in the 3rd Degree, SU falsely alleged that Plaintiff "did intentionally cause physical injury to another."   It further alleged that Jane Roe "required medical attention and was transported by ambulance to St. Joseph's Hospital where she was treated for head and face pain along with swelling, bruising and blurred vision to her left eye."  SU further alleged that Jane Roe was "diagnosed with a concussions [sic]."

61.     The first charge, which was signed by Lt. Richard Smith of DPS, contains one or more false statements.   Medical records provided in connection with Plaintiff's criminal proceeding proved that Jane Roe did not sustain any injuries.  In fact, the emergency staff at St.

Joseph's Hospital expressly ruled out a concussion and found "unremarkable" findings upon examining Jane Roe for self-reported "face pain."

62.     In support of its second charge of Assault in the 3rd Degree, SU alleged that "During his struggle with uniformed officers of the Department of Public Safety [redacted] actively resisting, forcing the arresting offers to struggle to safely bring [Plaintiff] to the ground where he continued to resist until he was finally placed in handcuffs.  During the struggle, an arresting officer, PSO John Romano suffered an injury to his left wrist.  Officer Romano was in extreme pain and was treated at Crouse Hospital where he was diagnosed with a sprained left wrist."

63.     The second charge, which was signed by Commander M. J. Hartnett, contains one or more false statements.  Bodycam footage taken from the incident show that Plaintiff was never informed that he was being arrested and, therefore, did not resist arrest.  The charge also contradicts an incident statement prepared and signed by Defendant Zarnowski, in which she alleged that Defendant Romano "sustained a severe sprain to his right wrist."  Upon information and belief, there is no record of Defendant Romano going to Crouse Hospital and receiving a diagnosis of a sprained left wrist.

64.     In support of its charge of Resisting Arrest, SU alleged that Plaintiff "intentionally prevents the Department of Public Safety Officers from effecting an authorized lawful arrest for Assault in the 3rd when he failed to comply with repeated verbal commands advising him to place his hands behind his back.  Furthermore, [Plaintiff] pulls and struggles against uniformed officers.  As a result of [Plaintiff's] actions, he was safely taken down to the ground and placed in handcuffs."

65.     The charge, which was signed by Defendant Zarnowski, contains false statements. It is clear from multiple versions of video footage, and witness accounts, that Defendants Zarnowski, Romano, and Fuentes never informed Plaintiff that he was being placed under arrest. Therefore, he did not resist arrest. The footage also shows that Defendants never asked Plaintiff to place his hands behind his back and that Plaintiff did not "pull or struggle" prior to being taken to the ground. Finally, Defendants' use of excessive force during the arrest was not "safe."

66.     As a result of the false statements made by officers of DPS, including Defendant Zarnowski, Plaintiff was criminally charged with two misdemeanor counts of Assault in the 3rd Degree and one misdemeanor count of Resisting Arrest. Plaintiff was forced to retain a criminal defense attorney, at this own expense, to defend himself against the charges.

***SU Brings Disciplinary Charges Against Plaintiff***

67.     In addition to filing criminal charges against Plaintiff, SU pursued disciplinary charges against him.

68.     On February 8, 2022, Defendant Hradsky issued a letter placing Plaintiff on an interim suspension. As his purported basis for that action, Defendant Hradsky claimed that Plaintiff "engaged in a physical altercation with another student with whom you have a No Contact Order, where you allegedly struck them in the face causing injury." Defendant Hradsky also stated, "It is further alleged that when interacting with Department of Public Safety Officers, you resisted arrest, and caused injury to the officer."

69.     Under the terms of the interim suspension, Plaintiff was prohibited from any presence on SU owned property and from enrollment in any course or program offered by SU. He was forced to immediately disenroll from his classes only three months prior to his scheduled graduation date.

70.     On April 12, 2022, SU's Office of Community Standards issued a notice to Plaintiff stating that he was being charged with violating four sections of SU's Code of Student Conduct:  "Section 1) Physical harm or threat of physical harm to any person or persons, including but not limited to:  assault, sexual assault, or other forms of physical abuse; Section 3) Assistance, participation in, promotion of, or perpetuation of conduct, whether physical, electronic, oral, written or video, which threatens the mental health, physical health, or safety of anyone; Section 12) violation of any international, federal, state, or local law; and Section 18) failure to comply with the lawful directives of University officials who are performing the duties of their office, especially as they are related to the maintenance of safety or security."

71.     On or about April 22, 2022, a Student Conduct Board assembled pursuant to SU's Student Conduct System Handbook conducted a hearing on the above charges.

72.     During the hearing, Plaintiff presented credible evidence that he did not physically assault Jane Roe, and that he did not resist arrest.  Plaintiff played video footage of his interaction with Jane Roe and pointed out that he was holding a drink in his right, dominant hand, and used his left hand to push her phone away in self-defense.

73.     Plaintiff also played video footage of his interaction with Defendants Zarnowski, Romano, and Fuentes, to show the Conduct Board that he was not told that he was being arrested, and that he did not resist arrest.

### SU Suspends Plaintiff Based on False Information

74.     On May 23, 2022, the Conduct Board issued a decision finding Plaintiff "responsible" for violations of three sections of the Code of Student Conduct:  Section 1 of the Code - Physical harm or threat of physical harm to any person or persons, including but not limited to:  assault, sexual assault, or other forms of physical abuse; Section 3 of the Code -

Assistance, participation in, promotion of, or perpetuation of conduct, whether physical, electronic, oral, written or video, which threatens the mental health, physical health, or safety of anyone; and Section 12 of the Code - violation of any international, federal, state, or local law.

75.     The Conduct Board found Plaintiff "not responsible" for a violation of Section 18 of the Code: "failure to comply with the lawful directives of University officials who are performing the duties of their office, especially as they are related to the maintenance of safety or security."

76.     The Conduct Board provided the following basis for its decision of "responsible": "The Board found that on or about February 8, 2022, the Impacted Party put her phone in your face to record you.  Your action of reaching out to push the phone away from you was excessive and more likely than not caused mental and physical injury to the impacted party."

77.     The Conduct Board provided the following basis for its decision of "not responsible":   "You did not violate your no contact order as there is no evidence to say you approached the Impacted Party first or had any communication with them.  Additionally, you did not resist arrest as you were never instructed you were being arrested nor instructed why you had to leave with Department of Public Safety officers."

78.     Despite the Conduct Board's finding that Plaintiff did not violate the NCO and did not resist arrest, it nonetheless recommended that Plaintiff be given a one semester suspension. SU accepted the Conduct Board's recommendation and imposed a one-semester suspension upon Plaintiff for the Spring 2023 academic term.

79.     SU's decision to impose a suspension as discipline was based on an unsupported allegation that Jane Roe suffered a physical injury from her encounter with Plaintiff.   The Conduct Board stated, specifically, "The Board has assigned the Respondent a one-semester

suspension in light of the injury caused to Impacted Party…she did have two contusions, a red-eye, and a concussion."

80.     After receiving the Conduct Board's decision, Plaintiff obtained, through his criminal proceeding, records from Jane Roe's visit to the emergency department of St. Joseph's Hospital.  Those records showed that Jane Roe did not sustain "two contusions, a red-eye, and a concussion," as both she and SU claimed.  After conducting a physical examination and CT scan, the emergency department expressly ruled out a concussion and concluded that there were "unremarkable" findings with "no focal neuro deficits."  Jane Roe's eyes presented as "negative for pain and redness."   The only diagnosis given to Jane Roe was a "headache" and "left-sided face pain" – both of which were self-reported.

81.     With new evidence in hand, on May 26, 2022, Plaintiff submitted an appeal of the Board's decision to SU's Appeal Board.  Within the appeal, he provided a copy of Jane Roe's medical report proving that she did not sustain the injuries that she claimed.

82.     Within the appeal, Plaintiff also reiterated that it was Jane Roe – not he – who violated the No Contact Order.

83.     Despite the compelling and conclusive evidence provided by Plaintiff in his appeal, which established that Jane Roe provided false information to SU, the Appeals Board nonetheless sustained the Conduct Board's decision of a one semester suspension.  As its rationale for the decision, the Appeals Board stated that Plaintiff's conduct in pushing Jane Roe's phone away from this face was "excessive."

84.     At the time that SU suspended Plaintiff, he had only 13 credits left to graduate.

85.     Upon information and belief, SU did not pursue disciplinary charges against Jane Roe, even though it is undisputed that she violated the NCO and falsely stated that she was injured.

86.     In addition, bodycam footage taken from February 8, 2022 shows Jane Roe violently and disrespectfully confronting Defendant Zarnowski.  Upon information and belief, no disciplinary action was taken against Jane Roe for her conduct towards the officer.

87.     Upon information and belief, SU also did not pursue disciplinary charges against numerous other female students who also physically threatened and bullied Plaintiff, including the female students who labeled Plaintiff a "rapist" and placed him in immediate physical harm.

88.     As a result of the actions taken by Defendants, Plaintiff has suffered severe emotional distress, mental trauma, and physical harm, including pain and swelling to his wrists.

89.     Plaintiff has also incurred significant monetary damages resulting from Syracuse University's decision to suspend him and delay his entry into the workforce and its decision to bring criminal charges against him.

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS
## UNREASONABLE SEARCH AND SEIZURE

90.     Plaintiff repeats and realleges paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     By employing Defendants Zarnowski, Romano, and Fuentes as DPS officers, who exercise law enforcement authority within SU's campus and any properties owned, controlled, or administrated by SU, Defendants SU and SU Board perform a public function traditionally

performed exclusively, or almost exclusively, by government, and is therefore operating under color of state authority.

92.     On or about February 8, 2022, Defendants, acting under color of state law, jointly and severally, in conspiring with each other, unlawfully arrested Plaintiff without probable cause.

93.     Defendants' conduct was in violation of Plaintiff's right to be free from an illegal seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment of the Constitution of the United States.

94.     Defendants SU, SU Board and Hradsky ratified Defendant Zarnowski, Romano, and Fuentes' conduct, as they knew of and specifically made a deliberate choice to approve of Defendant Zarnowski, Romano, and Fuentes' actions and the basis for them.

95.     The conduct of Defendants was unreasonable and, therefore, they are subject to 42 U.S.C. §§§ 1983, 1985, and 1986.

96.     Defendants' actions were committed deliberate indifference, intent, malice, and/or with reckless disregard for the harm caused to Plaintiff by their actions.

97.     Defendants' actions were designed to and did cause specific and serious physical and emotional harm to Plaintiff in violation of Plaintiff's Constitutional rights.

98.     As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
**<u>VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS</u>**
**<u>USE OF EXCESSIVE FORCE</u>**

99.     Plaintiff repeats and realleges paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    On or about February 8, 2022, Defendants Zarnowski, Romano, and Fuentes, acting under color of state law, used excessive force to knock Plaintiff to the ground and restrained Plaintiff face down for a prolonged period.

101.    Defendants Zarnowski, Romano, and Fuentes' conduct was an objectively unreasonable physical seizure in violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution.

102.    Defendants' use of force was not warranted or justified by the factual circumstances.  Plaintiff did not commit a crime which warranted his arrest, and he did not pose an immediate threat to the safety of Defendants or others.   Plaintiff was unaware that he was being arrested by Defendants and, therefore, he did not resist arrest or attempt to evade arrest by flight.

103.    Defendants SU, SU Board and Hradsky ratified Defendant Zarnowski, Romano, and Fuentes' conduct, as they knew of and specifically made a deliberate choice to approve of Defendant Zarnowski, Romano, and Fuentes' actions and the basis for them.

104.    The conduct of Defendants was unreasonable and, therefore, they are subject to 42 U.S.C. §§§ 1983, 1985, and 1986.

105.    Defendants' actions were designed to and did cause specific and serious physical and emotional harm to Plaintiff in violation of Plaintiff's Constitutional rights.

106.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

Bousquet Holstein PLLC • 110 West Fayette Street, Suite 1000 • Syracuse, New York 13202 • (315) 422-1500

### AS AND FOR A THIRD CAUSE OF ACTION
### <u>VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS</u>
### <u>FAILURE TO INTERVENE</u>

107.    Plaintiff repeats and realleges paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    On or about February 8, 2022, Defendants, acting under color of state law, jointly and severally, failed to intervene in one another's conduct to protect the constitutional rights of Plaintiff while excessive force was being used and Plaintiff was unjustifiably arrested.

109.    The conduct of Defendants was unreasonable and, therefore, they are subject to 42 U.S.C. §§§ 1983, 1985, and 1986.

110.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### <u>VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS ACT OF 1972</u>

111.    Plaintiff repeats and realleges paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.    Plaintiff is a Black male student of SU.

113.    Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or subjected to discrimination under any education program or activity receiving Federal assistance."  Title IX prohibits universities which receive federal funds, such as SU, from imposing discipline where gender is the motivating factor in the decision to discipline.

114.    The conduct of Defendants in imposing disciplinary sanctions against Plaintiff based on findings that were erroneous and contrary to the weight of the evidence, as well as their

Bousquet Holstein PLLC • 110 West Fayette Street, Suite 1000 • Syracuse, New York 13202 • (315) 422-1500

failure to consider evidence discrediting Jane Roe and supporting Plaintiff's account of the events of February 8, 2022, supports a reasonable inference that Defendants acted out of discriminatory bias and that gender was a motivating factor in their decision to suspend Plaintiff.

115.    Defendants' failure to take appropriate disciplinary action against Jane Roe and other similarly situated female students, even though they committed offenses that were more egregious than the offense which Plaintiff was alleged to have committed, further supports an inference that gender was a motivating factor in Defendants' actions.

116.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981

117.    Plaintiff repeats and realleges paragraphs 1 through 116 of this Complaint as if fully set forth herein.

118.    Section 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

119.    Subsection (c) of the statute provides that "the rights protected under this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

120.    The conduct of Defendants Zarnowski, Romano, and Fuentes on or about February 8, 2022, while acting under color of state law, in entering Plaintiff's classroom while he was giving a presentation in front of his peers, knocking him to the floor violently, restraining

him for several minutes while false accusing him of having a weapon, forcefully handcuffing him, and walking him through an academic building, was substantially motivated by racial animus.

121.    Defendants SU and SU Board's actions in ratifying the conduct of Defendants Zarnowski, Romano, and Fuentes, filing criminal charges against Plaintiff, and imposing a suspension on Plaintiff, were also substantially motivated by racial animus.

122.    Defendants' actions infringed on Plaintiff's right to enjoy the equal benefits as similarly situated non-Black students of SU.

123.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## ASSAULT

124.    Plaintiff repeats and realleges paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.    Defendants Zarnowski, Romano, and Fuentes, acting within the scope of their employment with SU, intentionally, willfully, and maliciously assaulted Plaintiff by threatening and inflicting imminent harm and/or offensive bodily contact through a violent and menacing act.

126.    The actions taken by Defendants Zarnowski, Romano, and Fuentes caused apprehension of such contact in Plaintiff.

127.    The actions of Defendants Zarnowski, Romano, and Fuentes were not privileged, as Plaintiff did not know he was being arrested and, therefore, he did not resist arrest.

128.     Defendants Zarnowski, Romano, and Fuentes were, at all relevant times, agents, servants, and employees acting within the scope of their employment with Defendant SU and the SU Board, both of which are therefore liable for their conduct.

129.     As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## BATTERY

130.     Plaintiff repeats and realleges paragraphs 1 through 129 of this Complaint as if fully set forth herein.

131.     On or about February 8, 2022, Defendants Zarnowski, Romano, and Fuentes, acting within the scope of their employment with SU, intentionally, willfully, and maliciously battered Plaintiff by knocking him to the floor violently, restraining him for several minutes, forcefully handcuffing him, and inflicting additional offensive bodily contact through a violent and menacing act.

132.     The actions of Defendants Zarnowski, Romano, and Fuentes were not privileged, as Plaintiff did not know he was being arrested and, therefore, he did not resist arrest.

133.     Defendants Zarnowski, Romano, and Fuentes were, at all relevant times, agents, servants, and employees acting within the scope of their employment with Defendant SU and the SU Board, both of which are therefore liable for their conduct.

134.     As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## <u>FALSE ARREST AND FALSE IMPRISONMENT</u>

135.    Plaintiff repeats and realleges paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.    The actions of Defendants Zarnowski, Romano, and Fuentes on or about February 8, 2022, in conducting an unlawful arrest of Plaintiff without probable cause, constitutes false arrest and false imprisonment.

137.    Defendants intended to confine Plaintiff, and did, in fact, confine Plaintiff.

138.    Plaintiff did not consent to the confinement.

139.    Due to the fact that Defendants Zarnowski, Romano, and Fuentes did not inform Plaintiff of the arrest, and did not have probable cause for the arrest, the confinement was not privileged.

140.    Defendants Zarnowski, Romano, and Fuentes were, at all relevant times, agents, servants, and employees acting within the scope of their employment with Defendant SU and the SU Board, both of which are therefore liable for their conduct.

141.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

## AS AND FOR A NINTH CAUSE OF ACTION
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

142.    Plaintiff repeats and realleges paragraphs 1 through 141 of this Complaint as if fully set forth herein.

143.    On or about February 8, 2022, Defendants Zarnowski, Romano, and Fuentes committed a tortious act of intentional infliction of emotional distress by assaulting and battering

Plaintiff, falsely arresting Plaintiff, subjecting Plaintiff to humiliation, and knowingly and maliciously initiating criminal proceedings against Plaintiff without cause or justification.

144.    The actions of Defendants Zarnowski, Romano, and Fuentes are extreme and outrageous and are well outside the realm of human decency.

145.    The tortious actions of Defendants Zarnowski, Romano, and Fuentes caused Plaintiff to suffer severe emotional distress, mental trauma, and bodily harm.

146.    Defendants Zarnowski, Romano, and Fuentes were, at all relevant times, agents, servants, and employees acting within the scope of their employment with Defendant SU and the SU Board, both of which are therefore liable for their conduct.

147.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

**AS AND FOR A TENTH CAUSE OF ACTION**
**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**
**<u>(PLED IN THE ALTERNATIVE TO THE SIXTH, SEVENTH, EIGHTH AND NINTH</u>**
**<u>CAUSES OF ACTION)</u>**

148.    Plaintiff repeats and realleges paragraphs 1 through 147 of this Complaint as if fully set forth herein.

149.    On or about February 8, 2022, Defendants Zarnowski, Romano, and Fuentes committed a tortious act of negligent infliction of emotional distress by knocking Plaintiff to the floor violently, restraining him for several minutes, forcefully handcuffing him, and inflicting additional offensive bodily contact through a violent and menacing act.

150.    Defendants' actions were, at a minimum, negligent, in that they failed to exercise reasonable care in the performance of their job duties.

151.    Defendants Zarnowski, Romano, and Fuentes were, at all relevant times, agents, servants, and employees acting within the scope of their employment with Defendant SU and the SU Board, both of which are therefore liable for their conduct.

152.    As a result of the above actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and has incurred monetary damages.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
### NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION
### (AGAINST DEFENDANTS SU, SU BOARD AND HRADSKY)

153.    Plaintiff repeats and realleges paragraphs 1 through 152 of this Complaint as if fully set forth herein.

154.    Defendant SU and SU Board and its employees, servants, and/or agents acting within the scope of their employment did negligently hire, retain, train, and supervise Defendants Zarnowski, Romano, and Fuentes, who were unfit for the performance of their duties on February 8, 2022.

155.    Upon information and belief, Defendants SU and SU Board failed to discipline Defendants Zarnowski, Romano, and Fuentes for their conduct.

156.    As a result of such actions, Plaintiff suffered, and continues to suffer, severe emotional distress and mental trauma, and incur monetary damages.

### DEMAND FOR A TRIAL BY JURY

157.    Plaintiff repeats and realleges paragraphs 1 through 156 of this Complaint as if fully set forth herein.

158.    Plaintiff hereby demands a trial by jury on all counts and issues so triable.

**WHEREFORE**, Plaintiff, John Doe, prays to this Court for the following relief:

a)  Compensatory damages in an amount to be determined at trial;

b)  Punitive damages at an amount to be determined at trial;

c)  A court order, pursuant to 42 U.S.C. § 1988, stating that Plaintiff is entitled to all attorneys' fees, costs, and disbursements involved in maintaining this action, including expert witness fees;

d)  An award of interest;

e)  An award for Plaintiff's attorneys' fees, costs, and disbursements, including but not limited to expert witness fees; and

f)  such and further relief as the Court may deem just and proper and to the maximum extent allowed by law.

Dated:    February 3, 2023                    **BOUSQUET HOLSTEIN, PLLC**

                                              */s/Kavitha Janardhan*
                                              _____
                                              Kavitha Janardhan, Esq.
                                              Bar Roll No.: 519962
                                              John L. Valentino, Esq.
                                              Bar Roll No.: 501070
                                              *Attorneys for Plaintiff, John Doe*
                                              110 West Fayette Street, Suite 1000
                                              Syracuse, New York 13202
                                              Tel: (315) 422-1500
                                              E-Mail: kjanardhan@bhlawpllc.com

5793733_4