## DEPARTMENT OF EDUCATION

### 34 CFR Part 99

### Family Educational Rights and Privacy

**AGENCY:** Department of Education.
**ACTION:** Final regulations.

**SUMMARY:** The Secretary amends the regulations implementing the Family Educational Rights and Privacy Act (FERPA). The amendments are needed to implement sections 951 and 952 of the Higher Education Amendments of 1998 (HEA). These amendments permit postsecondary institutions to disclose certain information to the public and to parents of students.

**DATES:** These regulations are effective August 7, 2000.

**FOR FURTHER INFORMATION CONTACT:** Ellen Campbell, U.S. Department of Education, 400 Maryland Avenue, SW., Washington, DC 20202–4605. Telephone (202) 260–3887. If you use a telecommunications device for the deaf (TDD), you may call the Federal Information Relay Service (FIRS) at 1–800–877–8339.

Individuals with disabilities may obtain this document in an alternative format (e.g., Braille, large print, audiotape, or computer diskette) on request to the contact person listed in the preceding paragraph.

**SUPPLEMENTARY INFORMATION:** On June 1, 1999, the U.S. Department of Education (the Department or we) published a notice of proposed rulemaking (NPRM) in the **Federal Register** (64 FR 29532). In the preamble to the NPRM, we invited interested persons to submit comments and recommendations, particularly on the proposed regulatory definitions of ''crime of violence'' and ''final results'' under § 99.39 and the provisions concerning nonconsensual disclosure of information to parents and guardians under § 99.31(a)(14).

We also proposed the following major changes in the NPRM to incorporate statutory provisions added by the HEA:

• Permit disclosure of education records to authorized representatives of the U.S. Attorney General in specified circumstances.

• Permit non-consensual disclosure of the final results of a disciplinary proceeding against a postsecondary student in specified circumstances.

• Permit non-consensual disclosure to parents and legal guardians of students under the age of 21 of information regarding a student's violation of laws or policies governing the use or possession of alcohol or a controlled substance.

These final regulations have significant changes from those proposed in the NPRM. We have provided more detail regarding the crime of violence provision. Specifically, we have included a list of crimes of violence and non-forcible sex offenses. We have also clarified when results become ''final'' and what categories of information may be disclosed under this provision. These changes are discussed in more detail in appendix B.

### Analysis of Comments and Changes

In response to the Secretary's invitation in the NPRM, 42 parties submitted comments on the proposed regulations. In appendix B, we analyze and summarize these comments and describe changes to the regulations. We discuss substantive issues under the sections of the regulations to which they pertain. Generally, we do not address technical changes and other suggestions that the law does not authorize us to make.

### Paperwork Reduction Act of 1995

These regulations do not contain any information collection requirements.

### Assessment of Educational Impact

In the NPRM, we requested comments on whether the proposed regulations would require transmission of information that any other agency or authority of the United States gathers or makes available.

Based on the response to the NPRM and on our review, we have determined that these final regulations do not require transmission of information that any other agency or authority of the United States gathers or makes available.

### Electronic Access to This Document

You may view this document, as well as all other Department of Education documents published in the **Federal Register**, in text or portable document format (PDF) on the Internet at the following sites:

http://cfco.ed.gov/fedreg.htm
http://www.ed.gov/news.html

To use PDF you must have Adobe Acrobat Reader, which is available for free at either of the previous sites. If you have questions about using PDF, call the U.S. Government Printing Office (GPO) toll free at 1–888–293–6498, or in the Washington, DC area at (202) 512–1530.

You may also find these regulations, as well as additional information about FERPA, on the following Web site:

http://www.ed.gov/offices/OM/fpco/

**Note:** The official version of this document is the document published in the **Federal Register**. Free Internet access to the official edition of the **Federal Register** and the *Code of Federal Regulations* is available on GPO Access at:

http://www.access.gpo.gov/nara/index.html

(Catalog of Federal Domestic Number does not apply.)

### List of Subjects in 34 CFR Part 99

Administrative practice and procedure, Education, Information, Parents, Privacy, Records, Reporting and record-keeping requirements, Students.

Dated: June 28, 2000.

**Richard W. Riley,**
*Secretary of Education.*

For the reasons discussed in the preamble and appendix B, the Secretary amends part 99 of title 34 of the Code of Federal Regulations as follows:

### PART 99—FAMILY EDUCATIONAL RIGHTS AND PRIVACY

1. The authority citation for part 99 continues to read as follows:

**Authority:** 20 U.S.C. 1232g, unless otherwise noted.

2. Section 99.1 is amended by revising paragraph (a)(2) to read as follows:

### § 99.1 To which educational agencies or institutions do these regulations apply?

(a) * * *
(2) The educational agency is authorized to direct and control public elementary or secondary, or postsecondary educational institutions.

* * * * *

3. Section 99.3 is amended by adding the definition of ''Dates of attendance'', revising the definition of ''Directory information'', and by revising paragraph (b)(1) of the definition of ''Education records'' to read as follows:

### § 99.3 What definitions apply to these regulations?

* * * * *

*Dates of attendance.* (a) The term means the period of time during which a student attends or attended an educational agency or institution. Examples of dates of attendance include an academic year, a spring semester, or a first quarter.

(b) The term does not include specific daily records of a student's attendance at an educational agency or institution.

(Authority: 20 U.S.C. 1232g(a)(5)(A))

*Directory information* means information contained in an education record of a student that would not generally be considered harmful or an invasion of privacy if disclosed. It includes, but is not limited to, the

student's name, address, telephone listing, electronic mail address, photograph, date and place of birth, major field of study, dates of attendance, grade level, enrollment status (*e.g.,* undergraduate or graduate; full-time or part-time), participation in officially recognized activities and sports, weight and height of members of athletic teams, degrees, honors and awards received, and the most recent educational agency or institution attended.

(Authority: 20 U.S.C. 1232g(a)(5)(A))

\*   \*   \*   \*   \*

*Education records.*

\*   \*   \*   \*   \*

(b) * * *

(1) Records that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record.

\*   \*   \*   \*   \*

4. Section 99.5 is amended by revising paragraph (c) to read as follows:

### § 99.5   What are the rights of students?

\*   \*   \*   \*   \*

(c) An individual who is or has been a student at an educational institution and who applies for admission at another component of that institution does not have rights under this part with respect to records maintained by that other component, including records maintained in connection with the student's application for admission, unless the student is accepted and attends that other component of the institution.

\*   \*   \*   \*   \*

5. Section 99.31 is amended by revising paragraph (a)(3), revising paragraph (a)(8), revising paragraph (a)(9)(iii), revising paragraph (a)(13), adding new paragraphs (a)(14) and (a)(15), and revising paragraph (b) and the authority citation to read as follows:

### § 99.31   Under what conditions is prior consent not required to disclose information?

(a) * * *

(3) The disclosure is, subject to the requirements of § 99.35, to authorized representatives of—

(i) The Comptroller General of the United States;

(ii) The Attorney General of the United States;

(iii) The Secretary; or

(iv) State and local educational authorities.

\*   \*   \*   \*   \*

(8) The disclosure is to parents, as defined in § 99.3, of a dependent student, as defined in section 152 of the Internal Revenue Code of 1986.

\*   \*   \*   \*   \*

(9) * * *

(iii)(A) If an educational agency or institution initiates legal action against a parent or student, the educational agency or institution may disclose to the court, without a court order or subpoena, the education records of the student that are relevant for the educational agency or institution to proceed with the legal action as plaintiff.

(B) If a parent or eligible student initiates legal action against an educational agency or institution, the educational agency or institution may disclose to the court, without a court order or subpoena, the student's education records that are relevant for the educational agency or institution to defend itself.

\*   \*   \*   \*   \*

(13) The disclosure, subject to the requirements in § 99.39, is to a victim of an alleged perpetrator of a crime of violence or a non-forcible sex offense. The disclosure may only include the final results of the disciplinary proceeding conducted by the institution of postsecondary education with respect to that alleged crime or offense. The institution may disclose the final results of the disciplinary proceeding, regardless of whether the institution concluded a violation was committed.

(14)(i) The disclosure, subject to the requirements in § 99.39, is in connection with a disciplinary proceeding at an institution of postsecondary education. The institution must not disclose the final results of the disciplinary proceeding unless it determines that—

(A) The student is an alleged perpetrator of a crime of violence or non-forcible sex offense; and

(B) With respect to the allegation made against him or her, the student has committed a violation of the institution's rules or policies.

(ii) The institution may not disclose the name of any other student, including a victim or witness, without the prior written consent of the other student.

(iii) This section applies only to disciplinary proceedings in which the final results were reached on or after October 7, 1998.

(15)(i) The disclosure is to a parent of a student at an institution of postsecondary education regarding the student's violation of any Federal, State, or local law, or of any rule or policy of the institution, governing the use or possession of alcohol or a controlled substance if—

(A) The institution determines that the student has committed a disciplinary violation with respect to that use or possession; and

(B) The student is under the age of 21 at the time of the disclosure to the parent.

(ii) Paragraph (a)(15) of this section does not supersede any provision of State law that prohibits an institution of postsecondary education from disclosing information.

(b) Paragraph (a) of this section does not forbid an educational agency or institution from disclosing, nor does it require an educational agency or institution to disclose, personally identifiable information from the education records of a student to any parties under paragraphs (a)(1) through (11), (13), (14), and (15) of this section.

(Authority: 20 U.S.C. 1232g(a)(5)(A), (b)(1), (b)(2)(B), (b)(6), (h), and (i))

6. Section 99.33 is amended by revising paragraph (c) to read as follows:

### § 99.33   What limitations apply to the redisclosure of information?

\*   \*   \*   \*   \*

(c) Paragraph (a) of this section does not apply to disclosures made to parents of dependent students under § 99.31(a)(8), to disclosures made pursuant to court orders, lawfully issued subpoenas, or litigation under § 99.31(a)(9), to disclosures of directory information under § 99.31(a)(11), to disclosures made to a parent or student under § 99.31(a)(12), to disclosures made in connection with a disciplinary proceeding under § 99.31(a)(14), or to disclosures made to parents under § 99.31(a)(15).

\*   \*   \*   \*   \*

7. A new section 99.39 is added to read as follows:

### § 99.39   What definitions apply to the nonconsensual disclosure of records by postsecondary educational institutions in connection with disciplinary proceedings concerning crimes of violence or non-forcible sex offenses?

As used in this part:

*Alleged perpetrator of a crime of violence* is a student who is alleged to have committed acts that would, if proven, constitute any of the following offenses or attempts to commit the following offenses that are defined in appendix A to this part:

Arson

Assault offenses

Burglary

Criminal homicide—manslaughter by negligence

Criminal homicide—murder and nonnegligent manslaughter

Destruction/damage/vandalism of property

Kidnapping/abduction

Robbery

Forcible sex offenses.

*Alleged perpetrator of a nonforcible sex offense* means a student who is alleged to have committed acts that, if proven, would constitute statutory rape or incest. These offenses are defined in appendix A to this part.

*Final results* means a decision or determination, made by an honor court or council, committee, commission, or other entity authorized to resolve disciplinary matters within the institution. The disclosure of final results must include only the name of the student, the violation committed, and any sanction imposed by the institution against the student.

*Sanction imposed* means a description of the disciplinary action taken by the institution, the date of its imposition, and its duration.

*Violation committed* means the institutional rules or code sections that were violated and any essential findings supporting the institution's conclusion that the violation was committed.

(Authority: 20 U.S.C. 1232g(b)(6))

8. Section 99.63 is revised to read as follows:

### § 99.63   Where are complaints filed?

A parent or eligible student may file a written complaint with the Office regarding an alleged violation under the Act and this part. The Office's address is: Family Policy Compliance Office, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202–4605.

(Authority: 20 U.S.C. 1232g(g))

9. Section 99.64 is amended by revising paragraph (d) to read as follows:

### § 99.64   What is the complaint procedure?

\*   \*   \*   \*   \*

(d) The Office may extend the time limit in this section for good cause shown.

10. Appendix A is added to part 99 to read as follows:

### Appendix A To Part 99—Crimes of Violence Definitions

*Arson*

Any willful or malicious burning or attempt to burn, with or without intent to defraud, a dwelling house, public building, motor vehicle or aircraft, personal property of another, etc.

*Assault Offenses*

An unlawful attack by one person upon another.

**Note:** By definition there can be no "attempted" assaults, only "completed" assaults.

(a) *Aggravated Assault.* An unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. This type of assault usually is accompanied by the use of a weapon or by means likely to produce death or great bodily harm. (It is not necessary that injury result from an aggravated assault when a gun, knife, or other weapon is used which could and probably would result in serious injury if the crime were successfully completed.)

(b) *Simple Assault.* An unlawful physical attack by one person upon another where neither the offender displays a weapon, nor the victim suffers obvious severe or aggravated bodily injury involving apparent broken bones, loss of teeth, possible internal injury, severe laceration, or loss of consciousness.

(c) *Intimidation.* To unlawfully place another person in reasonable fear of bodily harm through the use of threatening words or other conduct, or both, but without displaying a weapon or subjecting the victim to actual physical attack.

**Note:** This offense includes stalking.

*Burglary*

The unlawful entry into a building or other structure with the intent to commit a felony or a theft.

*Criminal Homicide—Manslaughter by Negligence*

The killing of another person through gross negligence.

*Criminal Homicide—Murder and Nonnegligent Manslaughter*

The willful (nonnegligent) killing of one human being by another.

*Destruction/Damage/Vandalism of Property*

To willfully or maliciously destroy, damage, deface, or otherwise injure real or personal property without the consent of the owner or the person having custody or control of it.

*Kidnapping/Abduction*

The unlawful seizure, transportation, or detention of a person, or any combination of these actions, against his or her will, or of a minor without the consent of his or her custodial parent(s) or legal guardian.

**Note:** Kidnapping/Abduction includes hostage taking.

*Robbery*

The taking of, or attempting to take, anything of value under confrontational circumstances from the control, custody, or care of a person or persons by force or threat of force or violence or by putting the victim in fear.

**Note:** Carjackings are robbery offenses where a motor vehicle is taken through force or threat of force.

*Sex Offenses, Forcible*

Any sexual act directed against another person, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent.

(a) *Forcible Rape* (Except "Statutory Rape"). The carnal knowledge of a person, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent because of his or her temporary or permanent mental or physical incapacity (or because of his or her youth).

(b) *Forcible Sodomy.* Oral or anal sexual intercourse with another person, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent because of his or her youth or because of his or her temporary or permanent mental or physical incapacity.

(c) *Sexual Assault With An Object.* To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent because of his or her youth or because of his or her temporary or permanent mental or physical incapacity.

**Note:** An "object" or "instrument" is anything used by the offender other than the offender's genitalia. Examples are a finger, bottle, handgun, stick, etc.

(d) *Forcible Fondling.* The touching of the private body parts of another person for the purpose of sexual gratification, forcibly or against that person's will, or both; or not forcibly or against the person's will where the victim is incapable of giving consent because of his or her youth or because of his or her temporary or permanent mental or physical incapacity.

**Note:** Forcible Fondling includes "Indecent Liberties" and "Child Molesting."

*Nonforcible Sex Offenses (Except "Prostitution Offenses")*

Unlawful, nonforcible sexual intercourse.

(a) *Incest.* Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

(b) *Statutory Rape.* Nonforcible sexual intercourse with a person who is under the statutory age of consent.

(Authority: 20 U.S.C. 1232g(b)(6) and 18 U.S.C. 16)

## Appendix B

## Analysis of Comments and Changes

**Note:** The following appendix will not appear in the Code of Federal Regulations.

*Applicability of FERPA to Educational Agencies and Institutions (§ 99.1)*

*Comments:* One commenter suggested that examples of an "educational agency and institution" should be provided in the regulations to resolve any confusion caused by the definition. Another commenter asked if the definition applies to State boards of control and governing boards of multi-campus college and university systems.

*Discussion:* FERPA applies to educational agencies and institutions to which funds have been made available under any program administered by the Secretary. The term "educational agency or institution" is not defined in the statute. Our revision clarifies that FERPA applies only to those agencies that direct or control the public elementary or secondary, or postsecondary educational institutions. These agencies include local schools districts or local school boards. We have deleted the phrase "and performs service functions for" because it is confusing, and have rewritten the definition to make it clearer.

For example, we would not consider a "State educational agency" (SEA) to be an "educational agency" under FERPA unless an SEA is authorized to direct and control public elementary, secondary or postsecondary educational institutions. Likewise, State boards of control and governing boards of multi-campus college and university systems may be educational agencies under FERPA if they are authorized to direct and control the institutions within their jurisdiction and if they receive Departmental funding. This authority to direct and control institutions varies according to State law.

*Changes:* We have revised § 99.1(a)(2) to apply to an educational agency that is authorized to direct and control public elementary or secondary, or postsecondary educational institutions.

*Definitions (§ 99.3)*

*Dates of Attendance*

*Comments:* Several commenters supported our more detailed explanation of the meaning of "dates of attendance."

*Discussion:* We believe that the clarification of the term "dates of attendance" will provide more detailed guidance to educational agencies and institutions because there has been some confusion over the term.

*Changes:* Although no substantive changes were made to the term "dates of attendance," we have created a separate paragraph for the definition.

*Directory Information*

*Comments:* Four commenters suggested that student e-mail addresses be added to the list of examples of records that may be disclosed as "directory information." One of the commenters noted that e-mail is the preferred method of communication at his institution, and that e-mail is now the primary means of communication with respect to many course-related activities. Another commenter also suggested adding class schedules and class rosters to the list. Two commenters, however, expressed concern about the safety of students if these types of information were made public. Both commenters asked that we discuss the opt-out provision because they felt many parents and students are not aware of this provision.

One commenter noted that "photograph" should not be included as "directory information" because some photographs may be taken involuntarily, such as student identification card photos. The commenter contended that institutions and the Department could be liable in an action for invasion of privacy for misappropriation of a person's likeness. The commenters believed that this could occur where an institution used photos in school catalogs.

*Discussion:* The examples of "directory information" listed in the regulations are not intended to be exhaustive. Rather, the examples illustrate the types of records that would not generally be considered harmful or an invasion of privacy if disclosed. We agree that as methods of communication and record management continue to evolve, it is useful to list additional categories of information that we believe are directory information, such as a student's e-mail address and photograph.

We do not believe that the disclosure of student e-mail addresses will generally be considered harmful or an invasion of privacy. We think that a student's e-mail address is analogous to a student's mailing address, an item already included as directory information.

The Department also has concluded that a student's photograph is a type of identifying information, like a name and address, that would generally not be harmful or an invasion of privacy if disclosed. Unlike social security numbers (SSNs), we do not believe that disclosure of photographs will allow access to other types of sensitive information such as disciplinary files or grades.

For parents or eligible students who do not wish to have institutions disclose photographs or any other category of directory information, FERPA affords them with an additional protection. FERPA requires schools to provide parents and eligible students with an opportunity to opt out of disclosing "directory information."

In response to the comments we received about class rosters and class schedules, we have decided not to include them in the regulations. We will reevaluate our previous advice that defined these items as "directory information" and further consider the concerns raised by commenters about student safety.

In particular, we are concerned that the inclusion of class rosters and class schedules may lead schools to disclose sensitive information. For instance, we believe a school's disclosure of the class schedule of a student enrolled in a special education or remedial class would be harmful or an invasion of privacy. Additionally, many class rosters include students' SSNs or other identification numbers; a disclosure of this information, even if class roster were designated as directory information, would be a violation of FERPA.

*Changes:* On the basis of comments that we received, we have revised the definition of directory information by adding student e-mail addresses. Additionally, as proposed in the NPRM, we have added as types of directory information enrollment status and photograph.

*Sole Possession Records*

*Comments:* Many commenters noted that the proposed definition of "sole possession records" should be clarified. These commenters were particularly concerned about the proposed phrases in the definition such as "typically maintained by the school official unbeknownst to other individuals" and "information taken directly from a student." The commenters contended

that a personal note that is not known to or shared with other staff should be considered a sole possession record, even if the student knows about the note or if the information comes from the student.

One commenter noted that the proposed definition excepted records used to make decisions about the student. The commenter believed that this exception could technically apply to the most minor decision about the student. Another commenter stated that the proposed changes seemed to define ''sole possession records'' out of existence.

*Discussion:* We agree that our proposed definition of ''sole possession records'' requires modification. In the NPRM, we sought to clarify that ''sole possession records'' do not include evaluations of student conduct or performance. We have decided that some of the requirements in our proposed definition could be confusing.

The main purpose of this exception to the definition of ''education records'' is to allow school officials to keep personal notes private. For example, a teacher or counselor who observes a student and takes a note to remind himself or herself of the student's behavior has created a sole possession record, so long as he or she does not share the note with anyone else.

*Changes:* We have decided not to make the revisions we proposed in the NPRM to the definition of ''sole possession records'' in § 99.3. We have clarified this definition by making minor changes.

*Rights of Students (§ 99.5)*

*Comments:* Two commenters asked that the provision address whether a student has access to an admissions file after having been accepted for admission but before enrolling.

*Discussion:* The amendment clarifies that a student attending an educational institution who applies for admission to a separate component of the institution and is rejected does not have any FERPA rights with respect to records maintained by that separate component of the institution. That student does not have these rights because he or she has not attended that separate component. Similarly, a student who is admitted to a separate component of an institution does not have FERPA rights with respect to the records of that component until he or she enrolls and becomes a student in attendance there. Each institution may determine when a student is in attendance in accordance with its own enrollment procedures.

*Changes:* We have revised § 99.5 to clarify that a student does not have FERPA rights with respect to records collected and maintained by a separate component of an educational institution, including records concerning the student's application for admission, if the student has not actually attended the other component.

*Conditions Under Which Prior Consent Is Not Required To Disclose Information (§ 99.31)*

*Disclosures to the U.S. Attorney General (§ 99.31(a)(3)(ii))*

*Comments:* A commenter expressed concern that the statutory term ''for law enforcement purposes'' is confusing and asked for clarification of the term. A commenter asked if ''authorized representatives of the Attorney General of the United States'' includes only special agents in the Department of Justice or the Federal Bureau of Investigation. This commenter also asked how this provision differs from the exception in FERPA for disclosing education records without consent in compliance with a subpoena. One commenter suggested that the Family Policy Compliance Office (FPCO) work with the Attorney General and educational associations to develop a form to document appropriate demographic information and circumstances supporting the Attorney General's request for education records.

Another commenter was concerned that the amendment may allow the Attorney General to have access to the records of an individual student who is suspected of a crime. The commenter added that this provision should apply only to crimes committed by an institution to defraud the Federal government or Federally funded programs. Another commenter noted that when disclosure is made to another governmental agency without consent, it should be made clear that the agency must protect the information from unauthorized redisclosure.

*Discussion:* The statutory amendment provides for nonconsensual disclosure of education records to authorized representatives of the Attorney General for law enforcement purposes under the same conditions that apply to the Secretary. In the case of the Attorney General, ''law enforcement purposes'' refers to the investigation or enforcement of Federal legal requirements applicable to federally supported education programs. For example, under this exception, the authorized representatives of the Attorney General can access education records without consent in order to investigate or enforce Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Equal Educational Opportunities Act of 1974, Title IX of the Education Amendments of 1972, Title IV of the Civil Rights Act of 1964, or the Civil Rights of Institutionalized Persons Act (CRIPA). Authorized representatives of the Attorney General include any employee of the Department of Justice, including the Federal Bureau of Investigation, so long as the employee is authorized to investigate or enforce the Federal legal requirements applicable to federally supported education programs.

This exception does not supersede or modify the exception in § 99.31(a)(9) for disclosure in compliance with a judicial order or lawfully issued subpoena. Rather, this new exception permits nonconsensual disclosure of education records in connection with the Attorney General's investigation or enforcement of Federal legal requirements of federally supported education programs. Given the limited nature of the allowable disclosures to the Attorney General, we believe that the development of a form to document the Attorney General's request for education records is not needed.

Finally, in response to the commenter seeking clarification about redisclosure provisions, we agree FERPA's redisclosure provisions apply to disclosures made to authorized representatives of the U.S. Attorney General. Section 99.35(b) provides that officials who collect information under this exception must protect the information, unless Federal law specifically authorizes the collection of that information. Officials must ensure that institutions do not permit personal identification of individuals and that they destroy the records when no longer needed. If another Federal law specifically authorizes the collection of personally identifiable information, then the provisions in that law govern the redisclosure and destruction of information. In addition to the privacy protections afforded parents and students by FERPA, the Privacy Act may afford some protections to some records maintained by Federal agencies. The Privacy Act of 1974 (5 U.S.C. 552a) protects records contained in a system of records maintained by Federal agencies that are retrieved by an individual's name, social security number or some other identifying number.

*Changes:* We have revised § 99.31(a)(3)(ii) by removing the phrase ''for law enforcement purposes.'' Because disclosures to the Attorney General are subject to § 99.35, those disclosures will only be made to investigate or enforce the Federal legal

requirements applicable to federally supported education programs.

*Disclosures to Parents of Dependent Students (§ 99.31(a)(8))*

*Comments:* Several commenters requested guidance on how to determine dependency status because the Internal Revenue Code definition of ''dependent'' is based on the student's status during the previous year.

One commenter noted that the NPRM assumed that the use of the words ''either parent'' implies that only two individuals might be responsible for a student's upbringing. The commenter noted that a guardian or stepparent might also be involved along with the biological parents.

Another commenter asked if a divorced parent might use this process to obtain financial information in the student's record about another parent. The same commenter also asked if the parent who claims the student as a dependent could restrict the kind of information that the institution may disclose to the other parent.

One commenter felt that this provision would harm victims of domestic violence by allowing the disclosure of information in a student's record to a domestic violence perpetrator. The commenter worried that providing educational institutions with the discretion to make these releases would not effectively safeguard victims of domestic violence. The commenter suggested that institutions be prevented from disclosing information in a student's record about one parent to another parent who has committed domestic violence.

A commenter noted that the regulations should clarify whether parents who obtain information about a dependent student under this provision are subject to the limits on redisclosure of information under § 99.33 of the FERPA regulations.

Two commenters wondered whether the provision applies to students who are legally adults and in conjunction with disclosures under § 99.31(a)(14). These commenters stated that this exception should be limited to a dependent student who is also legally a minor. Finally, this commenter also asked whether students may find out if their parents have accessed their education records.

*Discussion:* This amendment clarifies that if a student is claimed as a dependent for tax purposes and the individual seeking education records meets the definition of the student's ''parent'' under FERPA, then the institution has the discretion to disclose records to the parent. Under FERPA, a ''parent'' is defined as ''a parent of a student and includes a natural parent, a guardian, or an individual acting as a parent in the absence of a parent or guardian.'' 34 CFR § 99.3 (''Parent'').

We have consistently advised that, in order to determine a student's status as a dependent for tax purposes, institutions should look to the most recent year that the parent filed a return. For example, if the parent of a dependent student seeks access to the student's education records in November 1999, the institution should review the taxpayer's 1998 tax return to determine whether the student is a dependent.

Because eligible students—students attending a postsecondary institution or over the age of 18—retain all rights under FERPA, an educational agency or institution must obtain a reasonable assurance that the student meets the requirements as a dependent for tax purposes. If the educational agency or institution is unable to obtain that assurance, then information from the student's education records may not be disclosed. Once the educational agency or institution obtains that assurance, it has the discretion to, although it need not, disclose the student's education records to a parent of the student.

We received several comments concerning the use of this provision by one parent to access information about another parent. In response to these comments, we note that FERPA provides parents with broad rights of access to their children's education records when a child is under 18 and is not attending an institution of postsecondary education. This provision will have a more limited application because it is typically applied by institutions of postsecondary education.

We agree that a divorced parent could attempt to use this exception to obtain financial information in the student's education records about the other parent if the other parent claims the student as a dependent. However, an institution has no obligation to disclose any financial information about one parent to another. Thus, if a parent claims the student as a dependent, and does not want his or her financial information disclosed to his or her spouse or former spouse, the parent may make that request to the institution. The institution has the discretion not to disclose the information to the spouse or former spouse.

Because this provision provides an institution with discretion regarding what information, if any, it discloses to a parent, we do not believe that institutions will release information to known perpetrators of domestic violence. We strongly encourage victims of domestic violence to inform institutions of postsecondary education not to disclose any information from a student's education record to a perpetrator of domestic violence. We believe that institutions will understand the importance of complying with these requests. If a student or parent does not inform an institution of postsecondary education that a parent is a perpetrator of domestic violence, we do not believe it would be reasonable to expect institutions to be aware of this information. We cannot hold schools responsible for disclosures made unknowingly to a perpetrator of domestic violence.

We agree that the regulations should clarify whether parents who obtain information about a dependent student are subject to the limits on redisclosure of information under § 99.33.

This provision applies to education records of students who are legally adults. The plain language of the statute applies to ''dependent students'' including students who are adults. This provision is not related to disclosures made under the new drug and alcohol provision, contained in § 99.31(a)(14) of these regulations. Finally, dependent students can access their own education records. Under FERPA's recordkeeping requirements, the student's records contain, with some exceptions, documentation of every nonconsensual disclosure made by the institution of personally identifiable information.

*Changes:* We have revised § 99.31(a)(8) to clarify that it applies to a ''parent'' as defined under FERPA. We have also clarified in § 99.33(c) that parents who obtain information about a dependent student are not subject to these redisclosure limitations.

*Disclosures in Response to Legal Actions (§ 99.31(a)(9)(iii))*

*Comments:* Several commenters support a new provision that allows an educational agency or institution to disclose education records to a court on a nonconsensual basis, without a court order or subpoena, if a parent or eligible student has initiated legal action against the agency or institution and the records are necessary for the agency or institution to defend itself.

Commenters also noted that the Department has issued letters of finding stating that when a parent or student has filed a complaint with a State or Federal government agency, an accrediting agency, or a third party other than a court, an institution may disclose information to that party without consent in order to defend

itself. In particular, one commenter stated that the FPCO reversed its previous position and advised institutions that they could disclose information from a student's education record to a third party if the student alleged wrongdoing by the institution to that third party. Several commenters suggested that the regulations should address these additional instances of permissible nonconsensual disclosure. Finally, another commenter asked if third party recipients of education records, involved in litigation with a parent or student, may disclose the student's education records without consent during the course of the litigation.

*Discussion:* FERPA allows agencies and institutions to disclose education records without consent to comply with a judicial order or lawfully issued subpoena. The statute, however, requires that institutions first must make a reasonable effort to notify the parent or eligible student in advance of the disclosure. The purpose of this prior notification is to give the parent or eligible student an opportunity to object to the issuance of the judicial order or to move to quash the subpoena.

In 1996, the Department revised § 99.31(a)(9) to allow an educational agency or institution that initiated legal action against a parent or student to disclose relevant education records without consent and without a court order or subpoena, provided that the agency or institution had complied with the notification requirements contained in § 99.31(a)(9)(ii).

We also noted in the 1996 final regulations that we interpreted FERPA to allow an educational agency or institution to infer the parent's or student's implied waiver of the right to consent to the disclosure of information from education records if the parent or student had sued the institution. (61 FR 59292, 59294 (November 21, 1996). This interpretation allowed an educational agency or institution to disclose a student's education records to a court without consent, and without a court order or subpoena, in cases where a parent or the student had sued the agency or institution. While we discussed this interpretation in the preamble, we did not include it in the 1996 regulations.

For two reasons, we have concluded that an educational agency or institution may disclose education records to a court without consent and without a court order or subpoena if a parent or student has sued the agency or institution. First, an agency or institution should not be required to subpoena its own records or seek a judicial order in order to defend itself in a lawsuit initiated by a parent or student. Second, we believe that when a parent or eligible student sues an agency or institution, the parent or eligible student understands that the agency or institution must be able to defend itself. In order to defend itself, the agency or institution must be able to use relevant education records of the student. Thus, we believe that the parent or eligible student waives their FERPA protections under a theory of implied consent.

We have also concluded that the notification requirements contained in § 99.31(a)(9)(ii) are not necessary in any litigation between an educational agency or institution and a parent or student. For this reason, we have deleted the notification requirement in former § 99.31(a)(9)(iii) and have not included it in § 99.31(a)(9)(iii)(B) of these regulations.

The notification requirement is intended to provide a parent or student with an opportunity to object to an order or to move to quash a subpoena before an educational agency or institution discloses education records in compliance with the court order or subpoena. However, there is no such reason to require notification of a parent or student if an educational agency or institution sues a parent or student because the parent or student must be served with the lawsuit. Similarly, if a parent or student sues an educational agency or institution, the parent or student will not need to be notified of the lawsuit.

When an educational agency or institution files a lawsuit against a student or parent, the complaint is likely to disclose personally identifiable information from the student's education records. It does not make sense to require that an educational agency or institution inform a parent or student that it plans to disclose personally identifiable information from a student's education records in a complaint because a parent or student cannot do anything to prevent the complaint from being filed. Further, after a complaint has been filed, we do not think that notification of a parent or student is necessary. A parent or student who has been sued by an educational agency or institution should realize that personally identifiable information from the student's education records might be disclosed in the lawsuit. If the parent or student wants to ensure the student's privacy, the parent or student may petition the court to take measures to protect the student's privacy, such as sealing the court's records.

When a student or parent files a lawsuit against an educational agency or institution, the student or parent should realize that the educational agency or institution might need to disclose personally identifiable information from the student's education records in order to defend itself. We also feel that it is overly burdensome to require that an educational agency or institution notify the parent or student every time that it wants to disclose personally identifiable information from the student's education records in the lawsuit. Notification is also unnecessary because a parent or student who sues an educational agency or institution may petition the court to take measures to protect the student's privacy, such as sealing the court's records.

Several commenters asked the Department to extend the theory of implied waiver of the right to consent to a non-litigation context. Specifically, they alluded to the Department's ruling that when a student has taken an adversarial position against the institution, made written allegations of wrongdoing against the institution, and shared this information with third parties, the institution must be able to defend itself. While we offered this interpretation in a previous letter of finding, we did not propose to regulate on this issue in the NPRM. As a result, we cannot include these guidelines in our final regulations.

Finally, in response to the commenter who asked if third party recipients of education records may release student education records if the student or parent sues the third party, we did not address this issue in the NPRM. Thus we cannot regulate on this issue at this time.

*Changes:* We have added § 99.31(a)(9)(iii)(B) which allows an educational agency or institution to disclose education records to a court without consent, and without a court order or subpoena, if a parent or eligible student has initiated legal action against an educational agency or institution. We have also deleted the notification requirement in § 99.31(a)(9)(iii)(A) so that an educational agency or institution that has initiated legal action against a parent or student does not have to notify the parent or student before disclosing the student's relevant education records.

*Disclosure of the Final Results of a Disciplinary Proceeding (§ 99.31(a)(13), § 99.31(a)(14), and § 99.39)*

*Comments:* We received numerous comments about these provisions. The comments fell into four general categories: scope of the provision; the meaning of its terms; its effective date;

and the applicability of FERPA's redisclosure provisions. Specifically, with respect to the second category, commenters sought clarification of the terms "alleged perpetrator," "crime of violence," "nonforcible sex offense," and "final results."

*Scope of the Provision*

Commenters asked whether postsecondary institutions are now required to disclose the final results of a disciplinary proceeding conducted against an alleged perpetrator of a crime of violence or a non-forcible sex offense or whether the disclosure is discretionary. Commenters added that many public institutions are subject to State open records laws that require the release of records unless that release is contrary to Federal law. Thus, one commenter contended that an institution's discretion to release the final results of specified disciplinary proceedings is an illusion because the amendment eliminated the protection that FERPA had provided against disclosure.

Some commenters asked whether institutions may disclose the final results of a disciplinary proceeding to anyone or to just the victim. One commenter also noted a change to § 99.31(a)(13). He noted that, as proposed, § 99.31(a)(13) would have limited the disclosure of final results to proceedings in which the institution determines that the student committed the violation. The commenter noted, however, that the Department requires notification of the final results of a disciplinary proceeding, regardless of the outcome, to the victim in a sexual assault case.

*Definitions: "Alleged Perpetrator"*

We received many comments about the definitions used in this provision. Many comments concerned the term "alleged perpetrator of a crime of violence." These commenters noted that this term is confusing. Several commenters asked who is responsible for making the determination that a student is an "alleged perpetrator" of a crime of violence. Specifically, one commenter wondered whether the complainant, the requester, or the institution determines that a student is an "alleged perpetrator."

Commenters also asked when a student becomes "an alleged perpetrator." One commenter wondered if this determination is made when formal criminal charges are brought or sometime earlier in the criminal process. This commenter also wondered what would happen if the charges were dropped or if the student were found not guilty in a court of law. Several other commenters felt that a student should only become an "alleged perpetrator" of a crime of violence after formal criminal charges have been brought. In contrast, some other commenters suggested that Congress intended to cover disciplinary charges whether or not police or other law enforcement officials are involved. They added that the institution must determine whether a student is an "alleged perpetrator" of a crime of violence through the institution's disciplinary process.

Finally, some commenters expressed concern about libel or slander claims if institutions label a student an "alleged perpetrator of a crime of violence," because institutions do not use the terms "alleged perpetrator" or "crime of violence" in their disciplinary codes.

*"Crime of Violence"*

Many commenters suggested that the regulations should identify more specifically what offenses constitute "crimes of violence." For example, educational institutions asked whether petty property crimes, technical batteries, and other offenses are crimes of violence. College administrators indicated that they must be free to exercise discretion in categorizing incidents as "crimes of violence" without fear of losing institutional funding. Another commenter liked our proposed use of the Federal Bureau of Investigation's (FBI) Uniform Crime Reporting Program definitions.

One commenter asked that the Secretary remove confusing language and permit the disclosure of information for any student who commits a violation of institutional policies involving behavior that includes an element of violence or physical force. This commenter suggested that the term "felony" (which is used in the statutory definition of "crime of violence") should be replaced with "other serious offense." This commenter also asked that we provide examples of what constitutes a "serious" offense. Finally, this commenter asked that the Department recognize the difference between criminal prosecutions and student disciplinary proceedings by changing the term "student charged" to "student found responsible."

*"Non-Forcible Sex Offense"*

Many commenters wondered whether the new disclosure provisions apply to disciplinary proceedings against alleged perpetrators of a "non-forcible sex offense." The commenters were concerned that if the regulations do not apply to non-forcible sex offenses, postsecondary institutions could continue to keep proceedings secret, even matters involving such offenses as date rape. In short, these commenters were concerned that the term "crime of violence" may not encompass offenses such as date rape and asked that we include and define the term "non-forcible sex offense." One commenter contended that, without a clear definition of "nonforcible sex offense," the institution would be able to manipulate its disciplinary code in order to shield offenses from disclosure.

A commenter stated that the regulations did not define or include the term "non-forcible sex offense" because such an offense is considered a "crime of violence." Another commenter noted that the FBI's Uniform Crime Reporting (UCR) Program defines non-forcible sex offense as statutory rape and incest. However, one commenter contended that Congress did not intend the term "non-forcible sex offense" to include only statutory rape and incest.

*"Final Results"*

Many commenters stated that the regulations should define when a result is final. They noted that at many institutions a student has a right to appeal or seek review of a decision before a result is truly final. The commenters suggested that "final results" should be defined as that point when all internal institutional appeals have been exhausted. However, another commenter felt that "final results" should be defined earlier in the disciplinary process so that the public can be informed if there is institutional favoritism in the appeals process.

Several commenters also noted that the proposed definition of "final results" was unclear because it did not offer sufficient guidance as to the type of information that may be released. Because the proposed definition of "final results" includes disclosure of the violation committed, these commenters specifically requested that we define the term "violation committed."

One of these commenters contended that the term "violation committed" calls for a plain language description of the behavior that formed the basis of the disciplinary violation. Another commenter suggested that "violation committed" should be defined to include the nature of the offense, including both the institution's categorization or description of the offense and any criminal offenses to which that categorization corresponds, and the date, time and location of the offense. If the term "violation committed" is not defined, commenters believed that institutions could release

vague summaries of offenses, such as describing an assault as ''disorderly behavior.''

Commenters also noted that the definition of the term ''final results'' calls for the ''sanction imposed.'' Consequently, these commenters requested that we define the term ''sanction imposed'' to include a description of the disciplinary action, the date of imposition and duration, and definitions of any terms used, such as 'disciplinary probation.'

Several commenters had suggestions about the methods that institutions should use to disclose the final results of disciplinary proceedings. The commenters suggested that we should permit disclosure of the final determination, or the updated crime log required under 20 U.S.C. 1092(f), rather than requiring institutions to create a new, one-line record that constitutes final results. The commenters stated that any crime of violence or non-forcible sex offense should have a related entry on the campus crime log, including the nature, date, time, and general location of each crime and the disposition of the complaint, if known. (20 U.S.C. 1092(f)(4)(A)(i) and (ii)). One commenter noted that new information pertaining to a crime or offense, such as the final results of a disciplinary proceeding, must be included in the campus crime log within two business days. (20 U.S.C. 1092(f)(4)(B)(ii)). He stated that the regulations should also clarify that everything other than the final results of the disciplinary process, such as transcripts of proceedings and other documents, remains protected by FERPA as part of a student's education record.

In contrast, one commenter argued that the statute clearly defines final results. The commenter stated that the statute lists the types of information that may be disclosed as part of the final results of the disciplinary proceeding— the student's name, the violation committed, and any sanction imposed. The commenter noted that any amendment to FERPA that takes away the privacy rights of students should be construed narrowly to protect the intent of the law. Under this reasoning, he stated, the proposed regulatory language should not be modified.

*Redisclosure*

Some commenters asked that the regulations clarify that redisclosure limitations in § 99.33 do not apply to disclosures under § 99.39. Because the statute provides that final results may be disclosed to anyone, these commenters reasoned that limitations on redisclosure are inappropriate.

*Effective Date*

Several commenters asked us to address the issue of the effective date of the regulations. In particular, they asked us if the statute applies to determinations of the final result reached after October 7, 1998, or to requests dated after October 7, 1998. These commenters explained that students subject to disciplinary proceedings conducted prior to October 7, 1998 had a legitimate belief that Federal confidentiality laws protected their education records generated during these proceedings. The commenters requested that we continue to ensure that these records remain confidential. In contrast, one commenter felt that the statute should apply to any requests dated after October 7, 1998, regardless of when the records were created. Finally, one commenter asked the Secretary to clarify how institutions should handle requests that were made after October 7, 1998, but before the effective date of the final rule.

*Discussion: Scope of the Provision*

This new exception to the prior written consent rule does not require postsecondary educational institutions to disclose the final results of disciplinary proceedings to anyone. The disclosure is permissive. Thus, the effect of the amendment is that institutions are now free to follow their own policies regarding disclosure of this information. Institutions should consult with their own counsel or State officials regarding whether their State open records law requires disclosure of the final results of disciplinary proceedings in which a student is found to be an alleged perpetrator of a crime of violence. In response to the commenter who was concerned about State open records laws that require disclosure, FERPA does not prevent that disclosure.

*Inadvertent Deletion*

In section 99.31(a)(13) of the NPRM, we inadvertently deleted a provision that permits postsecondary institutions to disclose to the victim the results of a disciplinary proceeding against the alleged perpetrator of a crime of violence, regardless of the outcome. We have reinstated that provision, designated as § 99.31(a)(13). Sections 99.31(a)(13) and 99.31(a)(14) differ significantly. Victims may be informed of the final results of a disciplinary proceeding against an alleged perpetrator under § 99.31(a)(13), regardless of the outcome of that proceeding. In contrast, under § 99.31(a)(14), the institution may disclose to the public the final results of a disciplinary proceeding only if it has determined that:

(1) The student is an alleged perpetrator of a crime of violence or non-forcible sex offense; and

(2) The student has committed a violation of the institution's rules or policies with respect to the allegation.

*Definitions: ''Alleged Perpetrator'' and ''Crime of Violence''*

We have reviewed the numerous comments we received on these terms. In particular, we have considered the comments from school officials that contend that student codes of conduct are not generally written using criminal terms. We agree that the statutory definition of ''crime of violence,'' as defined in 16 U.S.C. 18, is difficult to apply. Therefore, we have re-written the provision to define ''crime of violence.'' The definition consists of an all-inclusive list of ''crimes of violence.'' This list consists of:

  Arson
  Assault offenses
  Burglary
  Criminal homicide—manslaughter by negligence
  Criminal homicide—murder and nonnegligent manslaughter
  Destruction/damage/vandalism of property
  Kidnapping/abduction
  Robbery
  Forcible sex offenses.

We define these crimes according to the Federal Bureau of Investigation's *Uniform Crime Reporting (UCR) Handbook* (1984) and the *UCR Reporting Handbook: National Incident-Based Reporting System* (NIBRS), Volume I (Data Collection Guidelines) (1996). We have listed these definitions in appendix A following these regulations. We have used the same definitions of murder and nonnegligent manslaughter, manslaughter by negligence, forcible sex offenses, non-forcible sex offenses, robbery, aggravated assault, burglary and arson, that are used in the Student Assistance General Provisions, 34 CFR Part 668, because institutions of postsecondary education already are familiar with these definitions. We have taken from the *UCR Reporting Handbook: NIBRS* the definitions for those crimes of violence that are not defined in the Student Assistance General Provisions regulations. Copies of these UCR publications are available from: Programs Support Section, Criminal Justice Information Services Division, Federal Bureau of Investigation, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306–0154.

We believe that this list will be easier to apply for institutions and that a standard set of definitions will allow for more uniform application. In response to the commenter who wondered if a petty property crime or a technical battery would constitute a crime of violence, those incidents are crimes of violence if they fall within the definitions of one of the crimes listed above.

We also agree with commenters that the term ''alleged perpetrator'' is not clear, and should be clearly defined. We define an ''alleged perpetrator'' as a student who is alleged to have committed acts that would, if proven, constitute any of the offenses that we have stated are crimes of violence or non-forcible sex offenses. As this definition suggests, we believe that institutions will have to use their judgment on a case-by-case basis about whether certain alleged acts constitute a crime of violence or non-forcible sex offense.

In order to determine if someone is an alleged perpetrator, institutions should look at allegations made as part of the disciplinary proceeding. These allegations can be made by a victim, a third-party witness, or by the institution. These allegations can be made at any time during the disciplinary proceeding, beginning from the time that an initial complaint or a charge is filed, until the final result is reached. This disciplinary process is not related to criminal proceedings. The institution does not need to refer the matter to the police or await any criminal proceedings in order to consider a student an alleged perpetrator of a crime of violence or non-forcible sex offense.

In response to the commenters who expressed concern about possible defamation claims if an institution labels a student ''an alleged perpetrator of a crime of violence,'' we note that the provision merely calls for the school to determine that a student has been alleged to have committed a crime of violence. In short, such a determination does not mean that the student committed a crime of violence, but that an allegation was made that the student engaged in the type of behavior that rises to the level described in the definitions of a crime of violence. We do not believe that a school can be found liable on a defamation claim for this type of determination.

*''Non-Forcible Sex Offense''*

We agree with the commenters who argued that Congress intended to cover the crimes of date rape and acquaintance rape. However, these two crimes fall within the statutory definition of ''crime of violence,'' specifically within the meaning of ''forcible sex offense'' as defined in the *UCR Reporting Handbook: NIBRS.* We have clarified that the definition of ''an alleged perpetrator of a crime of violence'' includes forcible sex offenses such as date rape and acquaintance rape. However, in an effort to avoid any confusion caused by not including a definition of ''non-forcible sex offense,'' we also define the term ''alleged perpetrator of a non-forcible sex offense'' in the regulations. ''Alleged perpetrator of a non-forcible sex offense'' is defined as ''a student who is alleged to have committed acts that, if proven, would constitute statutory rape or incest.'' This definition is based on the FBI's definition of ''non-forcible sex offense.'' The definition is listed in appendix A, which follows these regulations.

*''Final Results''*

The Department is concerned about violence on campus. We recognize the need for students to be aware of how an institution responds to these incidents. Therefore, we have defined ''final results'' to allow institutions to disclose the results of disciplinary proceedings before all internal reviews and appeals have been exhausted. We define ''final results'' to mean a decision or determination, made by an honor court or council, committee, commission, or other entity authorized to resolve disciplinary matters within the institution. We believe that this definition will benefit students who have been victims of violent crimes and non-forcible sex offenses. Institutions will not be able to claim that FERPA allows them to release results of disciplinary proceedings only after all internal reviews and appeals have been exhausted.

We agree that the regulations should provide additional guidance regarding how much and what type of information may be provided in the final results. We have defined the term ''violation committed'' and ''sanction imposed'' in order to help institutions understand what information may be released. We define ''violation committed'' as the institutional rules or code sections that were violated and any essential findings supporting the institution's conclusion that the violation was committed. We agree with the commenter that ''sanction imposed'' should be defined as a description of the disciplinary action taken by the institution, the date of its imposition, and its duration.

We believe that institutions generally will be able to disclose the final results of the disciplinary proceeding without creating new records. An institution may disclose its letter of final determination provided that the institution redacts all personally identifiable information in the letter except those portions that contain the student's name, the violation committed, and the sanction imposed. In other words, the institution must not disclose, without consent, any other portions of the letter of final determination that contain personally identifiable information that is directly related to the accused student or to any other student. If, however, the letter of final determination does not contain the violation committed or the sanction imposed, then the institution has discretion to create a new document in order to disclose this information.

Several commenters suggested that the final results of disciplinary proceedings be released in the form of an updated crime log. Because the release of this information is discretionary under FERPA, we agree with these commenters that the release of an existing crime log, as required by the campus security regulations (34 CFR § 668.46(f)), may be a satisfactory way to disseminate this information. It is worth noting that a crime log contains any crime reported to campus police or a campus security department, rather than only crimes of violence or non-forcible sex offenses.

The release of a campus crime log, however, will not disclose some information that is permitted to be disclosed under FERPA. Specifically, a campus crime log does not contain the names of alleged perpetrators of crimes of violence or non-forcible sex offenses. Rather, a campus crime log includes the nature, date, time and general location of each crime and the disposition of the complaint, if known. (20 U.S.C. 1092(f)(4)(A)(i) and (ii).) Final results that can be disclosed under FERPA, however, concern the name of the student, the disciplinary violation that the student committed, and the disciplinary sanction imposed on the student.

*Redisclosure*

The redisclosure limitations in § 99.33 do not apply to disclosures made under § 99.31(a)(14) because information about the final results of a disciplinary proceeding concerning a crime of violence or a non-forcible sex offense may be disclosed to anyone, including the media. Thus, we have revised § 99.33.

*Effective Date*

This amendment to FERPA was effective October 7, 1998. We interpret the effective date to mean the date that an institution reaches its final result in a disciplinary proceeding. This result preserves the expectation of students regarding confidentiality of disciplinary proceedings occurring before the effective date of the statute. Thus, institutions may disclose the final results of a disciplinary proceeding under § 99.31(a)(14) so long as the final results are reached on or after October 7, 1998.

With regard to requests for education records received between October 7, 1998, and the effective date of these final regulations, we will not find that institutions violated FERPA for disclosing the final results of disciplinary proceedings, regardless of when these results were reached. We previously had interpreted the effective date as being the date an institution received a request for records, rather than the date that an institution reached its final results. We will not find that institutions that followed our advice regarding this issue violated FERPA.

*Changes:* We have reinserted § 99.31(a)(13) in the regulations. This provision permits institutions of postsecondary education to disclose to the victim the final results of a disciplinary proceeding conducted against the alleged perpetrator of a crime of violence or a non-forcible sex offense regardless of the outcome of the proceedings. We have explained that an alleged perpetrator of a crime of violence or non-forcible sex offense should be determined by looking at the allegation that a student has committed a crime of violence or non-forcible sex offense. We have revised the definition of crime of violence to reflect an all-inclusive list of crimes. The list includes forcible sex offenses, such as date rape and acquaintance rape, and non-forcible sex offenses.

We have revised the definition of "final results." The definition means a decision or determination, made by an honor court or council, committee, commission, or other entity authorized to resolve disciplinary matters within the institution. We have also defined "violation committed" and "sanction imposed."

We have clarified that the redisclosure provisions do not apply to disclosures made in connection with a disciplinary proceeding under § 99.31(a)(14).

We have also explained that only final results determined on or after October 7, 1998, may be disclosed without consent under § 99.31(a)(14).

*Disclosures to Parents About Drug and Alcohol Violations (§ 99.31(a)(15))*

*Comments:* Many commenters were confused that § 99.31(a)(15) did not address a student's status as a dependent. They asked that we address the relationship between this exception and § 99.31(a)(8).

One commenter felt that using 21 as a dividing line will result in students being treated differently depending on their age. For example, if the institution disciplines the same student before and after the student turns 21, the institution may only disclose the earlier disciplinary determination. The commenter also believed that parents will not understand why they may be notified in the first instance and not in the second.

Another commenter pointed out that is it not clear how an institution should determine a student's age under the exception. The commenter wondered whether the institution should use the student's age when the incident occurs, when the institution determines that a disciplinary violation occurs, or when the institution makes a disclosure. He argued that the institutions should be able to disclose records to parents about violations if the student is under 21 at the time of the drug or alcohol incident.

Another commenter stated that the statute permits disclosure without consent to a "parent" or "legal guardian" but noted that the FERPA regulations define "parent" to include legal guardian, as well as an individual acting as a parent in the absence of a parent or a legal guardian. The commenter asked that the Department clarify the regulations by using only the term "parent," because use of "legal guardian" is confusing and repetitive. Alternatively, he contended that the regulations should use a special, narrower term such as "natural or adoptive parent" because FERPA is a privacy statute and should be construed narrowly. The commenter stated that the Department should also change the definition of "parent" in § 99.3 specifically to include individuals who adopt children.

Another commenter requested that we clarify that the statute does not apply to determinations of disciplinary violations that were made before October 7, 1998. Similarly, a commenter questioned what rule would apply to disclosures made under this exception after the passage of the statute and prior to the promulgation of these regulations.

A commenter stated that this provision, like the statute, is unclear because the term "disciplinary violation" is not defined. The commenter stated that without a regulatory definition of "disciplinary violation," FERPA will not be implemented uniformly throughout the 50 states, as required under 20 U.S.C. 1232g(c), and will vary based on the whims of campus administrators.

A commenter asked if there is any significance in using the term "determination" in § 99.31(a)(15), while using the term "disciplinary proceeding" in § 99.31(a)(14). He also asked if an institution must make a determination in a disciplinary proceeding, or if an institution can make a determination that there has been a violation of its disciplinary code in some other way. For example, the commenter wondered if an institution could determine that a disciplinary violation has been committed and send information to a parent under this provision if a video camera simply recorded an intoxicated student walking around campus. The commenter expressed concern that the threshold could be set so low as to eliminate the phrase "disciplinary violation" from the statute.

Finally, a commenter asked us to explain that students can find out when their parents have been notified of a drug or alcohol violation.

*Discussion:* This provision applies only to students under the age of 21 at the time of the disclosure to the parent. We clarify that an institution may disclose information under this exception without regard to whether the student is a dependent for tax purposes.

We have concluded that the student must be under 21 years of age at the time that the institution discloses to the student's parent that the student has committed a disciplinary violation with respect to alcohol or drug use or possession. We reach this conclusion because the statute links the institution's option to disclose with the age of the student and the institution's determination that the student committed a disciplinary violation. The Secretary has no statutory authority to allow institutions to disclose alcohol and drug violations of students after they have turned 21.

We agree with the commenter that the use of the term "legal guardian" is repetitive and unnecessary. The statutory term "parent and guardians" is covered by our regulatory definition of the term "parent." Likewise, it would be redundant to include the term "adoptive parents."

In response to the comment about disciplinary violations occurring before October 7, 1998, we conclude that

institutions are not permitted to disclose any determinations of disciplinary violations reached before October 7, 1998. This conclusion protects the legitimate expectation of confidentiality that students had regarding drug or alcohol disciplinary violations before October 7, 1998.

With regard to institutional disclosures to parents under this exception occurring after October 7, 1998, but prior to the promulgation of these final regulations, we will not find that institutions violated FERPA so long as the disclosure was based on a reasonable interpretation of the statutory amendment.

We recognize that there is confusion over the terms ''determination'' and ''disciplinary violation.'' Commenters sought guidance on the meanings of these terms and the responsibilities of postsecondary institutions under this exception.

We note that an institution may make a determination under this exception without conducting any sort of disciplinary proceeding. We reached this conclusion for two reasons. First, we compared the language used by Congress in this exception and the ''crime of violence'' exception. The ''crime of violence'' exception permits the disclosure of final results of a disciplinary proceeding conducted by the institution. This statutory provision clearly indicates that, before making any disclosures under this exception, an institution must first conduct some type of hearing or proceeding.

However, the drug and alcohol provision is worded very differently. That statutory provision does not use the term ''disciplinary proceeding,'' and we believe Congress' choice of words was deliberate. Therefore, we do not have the authority to require schools to conduct a disciplinary proceeding in order to determine that a student has committed a disciplinary violation with respect to drug or alcohol use. Institutions may establish and follow their own procedures for making these types of determinations.

The limited nature of this disclosure supports our interpretation that this exception does not require institutions to conduct any sort of formal disciplinary proceeding. This exception permits disclosures only to parents. In contrast, disclosures made in accordance with § 99.31(a)(14) can be made to the public. Thus, we believe that Congress intended to make it easier for institutions to inform parents of drug and alcohol violations by allowing the institution to release the information without conducting a formal disciplinary hearing.

Although we recognize that commenters sought a definition of the term ''disciplinary violation,'' we decline to define this term. We recognize that institutions have different codes of conduct. If we imposed a specific standard for a ''disciplinary violation,'' we would be placing a large burden on institutions to conform their codes of conduct to our regulatory definition. We will not impose such a burden.

In response to the concern that an institution could set the threshold so low as to read the phrase ''disciplinary violation'' out of the statute, we do not believe that institutions will act irresponsibly when making disclosures under this provision. We also emphasize that this disclosure, as with other permissible disclosures under § 99.31(a), is discretionary. Furthermore, the statutory amendment also provides that this new exception does not supersede any provision of State law that prohibits an institution of postsecondary education from making the permitted disclosure.

Finally, FERPA does not require institutions to notify students each time the institution discloses information from their education record. Institutions, however, are required, with some exceptions, to maintain a record of each disclosure of personally identifiable information from an education record along with that education record. Students at postsecondary institutions have the right under FERPA to access and view their own education records which should include a record of any disclosures made. Postsecondary students who wish to know if their parents have been notified of drug or alcohol violations should seek access to their own education records.

*Changes:* We revised § 99.31(a)15 by removing the term ''legal guardian.'' We have also specified that a student must be less than 21 years of age when the institution discloses to the parent that the institution has determined that a disciplinary violation has occurred.

[FR Doc. 00–17058 Filed 7–5–00; 8:45 am]
**BILLING CODE 4000–01–P**